AYRES, Judge.
Plaintiff instituted this action to recover of his employer and its insurer workmen’s compensation at the maximum statutory rate, LSA-R.S. 23:1202, as for total and permanent disability, and to recover of the insurer statutory penalties and attorney’s fees provided by LSA-R.S. 22:658, as the result of an accidental injury to his right knee, consisting primarily of a deranged medial meniscus occurring August 13, 1957, while engaged as a carpenter.
After trial there was judgment in plaintiff’s favor for compensation and medical expenses. His demands for penalties and attorney’s fees were rejected. From the judgment thus rendered plaintiff appealed. The sole question involved is whether the insurer’s failure to pay compensation after January 7, 1958, was arbitrary, capricious or without probable cause so as to entitle plaintiff to recover penalties and attorney’s fees.
The facts may be briefly recounted. Following his injuries plaintiff was paid either his full wages or compensation to January 7, 1958, when he was advised by his physician, Dr. Willis J. Taylor, an orthopedist, that He could return to his former occupation. He was further advised, however, that he had a residual disability of 7.5% to his right knee, which would likely improve with active use. The insurer’s adjuster on receiving a copy of Dr. Taylor’s report advised plaintiff his compensation as for total disability would be discontinued but that he was entitled to additional compensation because of his aforesaid residual disability, a statement of the amount of which he, the adjuster, would have to obtain from his home office. This statement was promptly requested, and on or about January 21st or 22nd, 1958, the adjuster submitted an offer of compromise settlement in the sum of $841.60, which plaintiff refused. This action was followed by his attorney’s demands on January 22, 1958, that the compensation at the weekly rate of $35 be brought to date. A discussion ensued between counsel for both plaintiff and defendant as to further medical examination of plaintiff without apparently reaching any agreement as to the expert to make the examination. However, at his or his counsel’s instance, plaintiff was examined by Dr. D. F. Overdyke, Jr., also an orthopedist, on February 4, 1958, who found plaintiff totally disabled. A copy of the doctor’s report was furnished the insurer February 12, 1958. On the following date this action was filed and an order was obtained assigning the case for trial for March 20, 1958.
On receipt of Dr. Overdyke’s report the insurer caused further examinations to be made by Dr. Taylor on February 18, 1958, and by Dr. Gene D. Caldwell, another orthopedist, on March 6, 1958. Dr. Taylor concurred in the conclusions reached by Dr. Overdyke that plaintiff was totally disabled, and Dr. Caldwell’s findings were the same. In the meantime plaintiff was offered, and refused, the minimum statutory compensation of $10 per week, predicated upon the residual disability to his knee. Following the report of Drs. Taylor and Caldwell, defendants, on March 13, 1958, paid all compensation to date, and on March 20, 1958, filed an amended answer admitting *199 liability for plaintiff’s compensation as for total disability and reiterated their proposal of March 13, 1958, for a further operation in an effort to relieve plaintiff’s condition.
Thus it appears from the record that the insurer’s discontinuance of payment of full compensation on January 7, 1958, was in accord with the medical report of Dr. Taylor, who was plaintiff’s physician and who had performed surgery upon his knee. The report was, as aforesaid, that plaintiff was able to resume the duties of his occupation. On receipt of this report, negotiations began immediately for a determination of a proper amount to compensate plaintiff for the aforesaid residual disability.
It is noted that Dr. Taylor was the only physician who had examined plaintiff prior to Dr. Overdyke’s examination of February 4, 1958. Dr. Overdyke’s report was furnished defendants on February 12, 1958. In an obvious effort to resolve the differences in Dr. Taylor’s findings as of that date and of Dr. Overdyke’s conclusions, a subsequent examination was caused to be made by Dr. Taylor on February 18, 1958, and by Dr. Caldwell on March 6, 1958.
Notwithstanding brief delays occasioned by the negotiations and the examinations and reports of the physicians, as aforesaid, were inevitable, no showing is made in the record other than that the insurer did everything that was reasonable and proper to settle plaintiff’s claim or to pay him compensation in accordance with the report of Dr. Taylor. On consideration of the subsequent reports confirming plaintiff’s total disability, the insurer promptly paid compensation accordingly, admitted liability in an amended answer and consented that judgment be rendered against it. In view; of these facts and circumstances, it does not appear that defendant’s actions with respect to the payment of compensation, or as to its discontinuance after January 7, 1958, were arbitrary, capricious or without probable cause. Carrington v. Consolidated Underwriters, 230 La. 939, 89 So.2d 399; Id., La.App., 80 So.2d 427.
Plaintiff contends, however, that defendant was well aware that plaintiff was partially disabled and, therefore, that its discontinuance of all compensation was indefensible. Cited in support of the position taken are — Wright v. National Surety Corp., 221 La. 486, 59 So.2d 695; Fruge v. Pacific Mutual Insurance Co., 326 La. 530, 76 So.2d 719. These authorities are inapposite to the facts of the instant case, particularly in that during the period for which compensation was discontinued negotiations for a settlement were under consideration. Moreover, compensation for partial disability was offered and refused. Hence, it could only be concluded that plaintiff is not entitled to recover penalties and attorney’s fees.
The judgment appealed is therefore affirmed at appellant’s cost.
Affirmed.
HARDY, J., absent.