398 So.2d 1124 (1981)
ESTATE OF Hollis G. BORER et al.
v.
LOUISIANA HEALTH SERVICE & INDEMNITY COMPANY.
No. 80-C-2971.
Supreme Court of Louisiana.
May 18, 1981.
*1125 James D. Johnson, Jr., Tom H. Matheny, Alton B. Lewis, Jr., and Charles G. Walker, of Pittman & Matheny, Hammond, for defendant-applicant.
Thomas B. Waterman, of Schmidt & Waterman, Hammond, for plaintiff-respondent.
DIXON, Chief Justice.
Hollis Borer was admitted into Baton Rouge General Hospital on May 3, 1978. Despite surgery and extensive testing, he died in the hospital six weeks later from causes which his physicians were unable to specifically determine.[1]
Borer had previously obtained two hospital and medical insurance policies from defendant. One was an individual policy issued October 28, 1977, and the other was a group policy obtained through Borer's employer on April 1, 1978. Borer had completed application forms for each policy, but the applications were not attached to the policies when issued.
Borer's heirs filed claims with defendant under both policies. Payment was refused on the ground that Borer's hospitalization was due to a preexisting condition and therefore excluded from coverage by the following provision contained in both policies:
"No Health Care allowance will be provided for:
1. services rendered during the first year of coverage for, or as a result of, any ailment, disease, or physical condition, the symptoms of which exhibit themselves before the Original Effective Date."
Borer's heirs then instituted this lawsuit. The trial judge held that the defendant could not assert the preexisting condition defense because the applications had not been attached to the policies when issued. The trial judge's ruling was based upon language from this court's opinion in Smith v. North American Company for Life, Accident and Health Insurance, 306 So.2d 751 (La.1975). The Court of Appeal affirmed, agreeing that the "broad sweep" of Smith mandates such a result. Estate of Hollis G. Borer et al. v. Louisiana Health Service & Indemnity Co., 398 So.2d 584 (La.App. 1st Cir. 1980). We granted writs to consider whether failure to attach the application to the policy should preclude an insurer from asserting a defense based upon a preexisting condition. 399 So.2d 585 (La.)
The policy at issue in Smith was a group credit accident and health insurance policy. Smith had procured the insurance by completing an application card in which he was instructed to list previous injuries and sicknesses. After the policy was issued, he was treated for left neck and shoulder pain, and he filed a claim with the insurer. The company determined that Smith had previously experienced neck trouble, but that this fact had not been disclosed by Smith in his application. The company attempted to rescind the contract by returning to Smith the premiums he had paid.
In the lawsuit which followed, the company asserted two defenses. First, it contended that the contract was null because of misrepresentations in the application. Second, conceding the validity of the contract, it claimed that the policy excluded coverage because this was a preexisting condition.
The trial judge, after admitting the application into evidence, determined that the contract was null because of misrepresentations by Smith. The Court of Appeal agreed that Smith could not recover, but its holding was based upon the provisions of *1126 the policy. Smith v. North American Company for Life, Accident & Health Insurance Co., 295 So.2d 483 (La.App. 3d Cir. 1974). The court found that the policy expressly denied coverage for preexisting conditions.[2] The court further agreed with defendant that Smith's claim was based on treatment for a condition which had manifested itself before the policy was issued. Finding that the policy denied coverage, the Court of Appeal did not address the defendant's defense of misrepresentation.
This court reversed, and allowed Smith to recover under the policy. The court correctly noted that, under R.S. 22:618(A), applications for insurance are not admissible in evidence unless attached to, or otherwise made a part of the policy, when issued and delivered. Because Smith's application had not been so attached, the court held that the application should not have been admitted into evidence. The court then reasoned:
"... Thus all evidence concerning pre-existing conditions not disclosed in the application which may have resulted in Smith's disability of February-September 1968 was improperly considered. Failure to disclose that evidence is not available to the insurer as a defense because a correct copy of the application for insurance was not `attached to or otherwise made a part of the policy.' " 306 So.2d at 754.
When applied to the defense of misrepresentation, this rationale is valid. False statements by the insured in the application for insurance vitiate the contract if they were made with the actual intent to deceive, or if such statements "materially affected either the acceptance of the risk or the hazard assumed by the insurer." R.S. 22:619(B). However, unless the application was attached to the policy when issued and delivered, the application does not become part of the contract, and therefore cannot be admitted into evidence in any action relative to such contract. R.S. 22:618(A). Thus, false statements by the insured in the application cannot be used in evidence if the application is not made part of the contract.
This aspect of the Smith opinion was correctly followed in Page v. American Motorist Insurance Co., Ltd., 381 So.2d 889 (La.App. 2d Cir. 1980). The issue in that case was whether the insurance policy included uninsured motorist coverage. The policy did not address the matter, but the application by the insured indicated that he did not desire such coverage. Since the application was not attached to, or otherwise made a part of the policy, the Court of Appeal held that the application could not be introduced into evidence to show the terms of the policy. This conclusion is sound. The application did not become part of the contract, and therefore cannot be used to define the terms of the policy.
As mentioned earlier, the insurer in Smith had asserted a second defense. The company contended that the policy's provisions excluded coverage for Smith's treatment because such treatment was for a condition which had manifested itself prior to the effective date of the contract.
The so-called preexisting condition defense, unlike the misrepresentation defense is a question of contract interpretation. The availability of the defense is not dependent upon statements made by the insured in the application; the question is whether the policy excludes coverage for preexisting conditions. Thus, whether the application is attached to the policy is irrelevant when the defense is based on the preexisting defense exclusion.
The sweeping nature of the Smith court's conclusions was noted by the Court of Appeal in the instant case, and had previously been commented upon by Second Circuit Court of Appeal. Truelove v. Blue Cross of Louisiana, 356 So.2d 1113 (La.App. 2d Cir. 1978), cert. denied, 358 So.2d 644 (La.1978); Henderson v. The Minnesota Mutual Life Insurance Co., 347 So.2d 53 *1127 (La.App. 2d Cir. 1977), cert. denied, 351 So.2d 167 (La.1977). We hold that failure to attach the application to the policy when issued and delivered does not affect the insurer's right to defend on the basis that, by the terms of the policy, coverage is excluded. To the extent that Smith v. North American Company for Life, Accident and Health Insurance, 306 So.2d 751 (La.1975), is contrary, that case is overruled.
In the instant case, the defendant has not invoked the defense of misrepresentation. This insurer is not attempting to rescind the contract because of false statements by the insured in the application. Rather, the defendant seeks to prove that, because of an exclusionary clause in the contract, the instant claim is not covered by the contract. Presentation of this defense is not dependent upon statements by the insured in the application, and failure of the insurer to attach the application to the policy does not preclude assertion of this defense.
For the foregoing reasons, the judgments of the lower courts are reversed, and the cause remanded to the trial court for a trial on the issue of whether the policies excluded coverage in the instant case. Costs of these proceedings to be borne equally by both parties.
NOTES
[1] The deposition of Dr. Charles Prosser, Borer's internist, was admitted into the record as an offer of proof. According to Dr. Prosser, Borer had previously experienced abdominal pain due to a gall bladder condition. His May 3, 1978 admission was because of similar abdominal pain, but was complicated by the presence of marked anemia. Surgery was performed to remove the gall bladder and to explore for the causes of the anemia. Postsurgery tests revealed that Borer was suffering from ulcerative colitis. Additionally, hospital records attributed Borer's death to cardiac arrest secondary to arrhythmia caused by coronary artery disease.
[2] The Court of Appeal based its conclusions upon two provisions of the insurance contract. First, the policy defined sickness as "sickness or disease contracted and first manifesting itself after the Effective Date ..." Second, in broad typed red print was the statement, "Disability caused by preexisting conditions is not covered."