606 So.2d 1365 (1992)
Larry I. IRVING, Sr. and Ida W. Irving
v.
UNITED STATES FIDELITY & GUARANTY COMPANY.
No. 24151-CA.
Court of Appeal of Louisiana, Second Circuit.
October 28, 1992.
*1366 Johnson & Placke by Allan L. Placke, West Monroe, for plaintiffs-appellees.
Theus, Grisham, Davis & Leigh by Phillip D. Myers, Monroe, for defendant-appellant.
Before MARVIN, SEXTON and NORRIS, JJ.
NORRIS, Judge.
Defendant, United States Fidelity & Guaranty Company ("USF & G"), appeals the trial court judgment awarding $50,000 policy limits to plaintiffs, Ida W. and Larry I. Irving, Sr. for the death of their son, David M. Irving. For the reasons expressed, we affirm.

Factual Background
Larry Irving, Sr.'s job as a maintenance superintendent for a trucking company required that he live in an apartment in Shreveport during the work week. His wife and children, however, remained in the family home in West Monroe. During a lunch break, Irving, Sr. went to the Ed Day Insurance Agency in Shreveport and applied for automobile liability insurance coverage on his 1979 Chevrolet Caprice, the car he used in Shreveport. In the process of completing the application for insurance, Irving, Sr. told the agent that he was divorced instead of married, that he was the sole operator of the vehicle, and that his address was 2041 Thornhill Avenue, Shreveport. Neither the agent nor the insurance *1367 application asked whether he had any children or maintained more than one residence.
On November 7, 1984, USF & G issued an automobile liability insurance policy to Irving, Sr. A short time thereafter, the policy was amended to include uninsured motorist coverage. The policy's uninsured motorist provision provided $50,000 coverage to the "insured" which it defined as "you or any `family member.'" The policy further defined "family member" as "a person related to you by blood, marriage or adoption who is a resident of your household."
On November 28, 1984, plaintiffs' son, David, was killed when an automobile driven by Sharon W. Roth struck him as he walked along Glenwood Drive (now, Moss Park Drive) in West Monroe. Roth's automobile liability insurance carrier, Allstate Insurance Company, paid to plaintiffs the full amount of its policy limits, $50,000. Thereafter, the Irvings filed a claim against USF & G for uninsured/underinsured motorist benefits. USF & G denied the claim contending that: (1) David Irving was not an insured under the policy because he was not a resident of Irving, Sr.'s household, and (2) the policy it issued to Irving, Sr. was null and void due to material misrepresentations made by Irving, Sr. regarding his marital status.
Prior to trial, plaintiffs filed a motion in limine requesting, not only that the insurance application be excluded from evidence, but also that USF & G be precluded from raising the issue of material misrepresentation since the application completed by Irving, Sr. was not attached to or made a part of the automobile liability policy. The trial judge, however, chose to admit evidence on the issue of material misrepresentation subject to plaintiffs' continuing objection.
Ultimately, the court found that plaintiffs were entitled to recover under the USF & G policy, reasoning that David Irving was clearly a resident of Irving, Sr.'s household and that Irving, Sr. "did not intentionally intend to make material misrepresentations."
Following the trial court's judgment, Mrs. Irving died, and her three remaining children were substituted as parties plaintiff.
On appeal, USF & G asserts only that the trial court erred in failing to find the policy null and void due to oral material misrepresentations.

Admissibility of Evidence on the Issue of Misrepresentation
La.R.S. 22:618 A provides, in pertinent part, that:
No application for life or health and accident insurance shall be admissible in evidence in any action relative to the policy, or contract, unless a correct copy of the application was attached to or otherwise made a part of the policy, or contract, when issued and delivered.
In the instant case, it is uncontested that the policy application was not attached to or otherwise made a part of the automobile liability policy issued to Irving, Sr. by USF & G. Thus, the application, introduced into evidence as an attachment to the insurance underwriter's deposition, should have been excluded by the trial court pursuant to plaintiffs' motion in limine. See Pugh v. Prudential Ins. Co., 546 So.2d 335 (La. App.3d Cir.1989); Gardiner v. Old Hickory Cas. Ins. Co., 529 So.2d 1324 (La.App. 5th Cir.1988). Indeed, under the circumstances presented here, the trial court should have precluded USF & G from raising the issue of material misrepresentation altogether.
The jurisprudence interpreting R.S. 22:618 establishes that when a policy application is not attached to or otherwise made part of the policy when issued and delivered, the insurer is barred from using any evidence to establish material misrepresentation on the application. Mitchell v. State Farm Fire and Cas. Co., 473 So.2d 399 (La.App.3d Cir.), writ denied, 477 So.2d 710 *1368 (1985). In Mitchell, an insurer denied coverage under a homeowner's policy on the ground that the insured misrepresented material facts on the policy application regarding prior fires. The court, after noting that the application was not attached to or otherwise made a part of the policy, held that the insurer was precluded from using any evidence to establish that the insured had made material misrepresentations in the application. See also Estate of Borer v. Louisiana Health Serv., 398 So.2d 1124 (La.1981) (agreeing, in dictum, that such an approach is proper when applied to the defense of misrepresentation).
In an attempt to circumnavigate this jurisprudence, USF & G now urges that Irving, Sr. made oral misrepresentations in completing the application. According to the uncontradicted testimony of Irving, Sr., the insurance agent filled out the application. Apparently, the agent asked the questions found in the application and marked the answers following Irving, Sr.'s verbal response. Thus, reasons USF & G, even though R.S. 22:618 precludes admission of the application itself, it does not preclude the introduction of evidence tending to show oral misrepresentation made incident to completion of the application.
We find USF & G's position untenable. In the instant case, Julia Galaviz, the underwriter for USF & G, stated in her deposition that she was not privy to the discussion between Irving, Sr. and the insurance agent, and relied solely upon the written application in issuing the policy and calculating the premiums. Thus, the evidence of Irving, Sr.'s oral statements is intended only for the purpose of establishing misrepresentation on the application. Mitchell and Borer provide that when an insurance application is not attached to or otherwise made part of the policy, the insurer is barred, not merely from using the application, but from using any evidence to establish misrepresentation on the application. Hence, USF & G should have been barred from introducing evidence of misrepresentation even for the limited purpose of showing oral misrepresentation made incident to completion of the application.
Accordingly, we find not only that the trial court should have excluded the policy application from evidence, but also should have precluded USF & G from raising the issue of material misrepresentation altogether.

Material Misrepresentation
Our analysis need go no further; however, since the trial judge never ruled on the motion in limine but instead accepted evidence on the issue of misrepresentation subject to plaintiffs' continuing objection, we think it prudent to address the propriety of the trial court's reasoning.
La.R.S. 22:619 A provides, in relevant part, that:
[N]o oral or written misrepresentation or warranty made in the negotiation of an insurance contract, by the insured or in his behalf, shall be deemed material or defeat or void the contract or prevent it attaching, unless the misrepresentation or warranty is made with the intent to deceive.
Section 619 B further provides, in part, that:
The falsity of any [statement made by the insured in an application for life or health and accident insurance] shall not bar the right to recovery under the contract unless such false statement was made with actual intent to deceive or unless it materially affected either the acceptance of the risk or the hazard assumed by the insurer.
Although R.S. 22:619 seems to provide that an insured's false statement bars recovery if it is made with intent to deceive or if it materially affects the insurer's risk, jurisprudence requires that the insurer prove both factors. See, e.g., Morgan v. Golden Rule Ins. Co., 568 So.2d 184 (La. App.2d Cir.1990); Swain v. Life Ins. Co., 537 So.2d 1297 (La.App.2d Cir.), writ denied, 541 So.2d 895 (1989); Jamshidi v. *1369 Shelter Mut. Ins. Co., 471 So.2d 1141 (La. App.3d Cir.1985).
In the instant case, the trial court found that Irving, Sr. did not intend to deceive USF & G when he failed to volunteer that he had two residences and children. This finding is not plainly wrong. Neither the agent nor the application requested such information. An insured, as layman, cannot be expected to anticipate and answer questions unasked by the insurer. The information required by an insurance company in order to process an application is not always apparent to a layman. Indeed, the agent who filled out and signed the application was in a better position than Irving, Sr. to identify and obtain the relevant information for processing the application. See Cousin v. Page, 372 So.2d 1231 (La.1979).
The trial court also found that Irving, Sr. did not intend to deceive USF & G when he misrepresented his marital status to the insurance agent. Intent to deceive must be determined from surrounding circumstances indicating the insured's knowledge of the falsity of the representations made in the application and his recognition of the materiality of his misrepresentations, or from circumstances which create a reasonable assumption that the insured recognized the materiality. Cousin v. Page, supra.
Although Irving, Sr. admittedly lied about being divorced, he explained that he was in a hurry to return from his lunch break and thought he might speed the application process along by indicating that he was not married. He further stated that he did not think his marital status would affect the insurance premiums on the Chevrolet Caprice since he would be the only person driving the car anyway. Moreover, he stated that he was not motivated by a desire to save on premiums, but merely hoped to save time in the application process. Under these circumstances, and in light of USF & G's failure to call any witnesses to dispute plaintiff's testimony, we cannot say that the trial court was plainly wrong in finding as it did.
Furthermore, we find that Irving, Sr's misrepresentation of his marital status was, in all respects, immaterial to the risk assumed by USF & G. In order for a misrepresentation to be considered material under R.S. 22:619, its nature must be such that, had the truth been known, the insurer either would not have contracted or would have contracted only at a higher premium rate. Benton v. Shelter Mut. Ins. Co., 550 So.2d 832 (La.App.2d Cir.1989); Jamshidi, supra. In the instant case, Julia Galaviz, the underwriter for USF & G, stated in her deposition that the policy premiums would not have increased even if Irving, Sr. had accurately reported being married. Thus, Irving, Sr.'s marital status was not material to the risk assumed by USF & G.
USF & G's real complaint, although not worded as such, is that Irving, Sr. did not report having children who were licensed to drive. According to Ms. Galaviz, the presence of licensed children in the Irving home would increase the risk assumed by USF & G, resulting in higher policy premiums. However, as previously discussed, Irving, Sr. never actually misrepresented that he was childless. The agent simply never inquired about children, and the application did not require such an inquiry. Indeed, given that Irving, Sr. was the sole operator of the insured vehicle and listed himself as such in the policy application, we cannot penalize him, as a layman, for failing to volunteer that he was a parent. Rather, it is the insurance agent, presented with a 42-year-old applicant who has indicated that he is divorced, who should have contemplated the necessity of inquiring about children.
The oral misrepresentation and the application should not have been allowed into evidence. Furthermore, USF & G has failed to show that the trial court was plainly wrong in finding that plaintiff did not intend to deceive it and that the misrepresentation did not materially affect the *1370 risk. Thus, judgment for plaintiffs in the amount of the $50,000 policy limit is affirmed. Costs are assessed to USF & G.
AFFIRMED.
SEXTON, J., concurs with reasons.
SEXTON, Judge, concurring.
I agree with all aspects of the opinion, but believe that the discussion concerning the effect of any misrepresentation is unnecessary since defendant did not attach the application to the policy.